UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
[Electronically Filed]

| | |
|---|---|
| B.B., ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| vs. ) | Case No. 5:24-CV-00028-BJB |
| ) | |
| CHRISTIAN COUNTY BOARD OF ) | |
| EDUCATION and KENTUCKY ) | |
| DEPARTMENT OF EDUCATION, ) | |
| ) | |
| DEFENDANTS. ) | |

**DEFENDANT RESPONSE TO PLAINTIFF'S MOTION
TO PROVIDE ADDITIONAL EVIDENCE PURSUANT TO 34 CFR 300.516**

Defendant Christian County Board of Education (CCBE) opposes the Motion to Provide Additional Evidence, filed by Plaintiff, B.B., on January 25, 2025. (*See* Doc. 27.) In his Motion, B.B. seeks to enter five categories of evidence into the record: (1) B.B.'s current Individualized Education Program (IEP); (2) 2022-2023 Annual Goals and Objectives Progress Report; (3) 2023-2024 Data Progress Tracking Report; (4) 2024 Psycho-Education Report; and (5) testimony and exhibits supporting the allegations of verbal and physical abuse, including restraint and seclusion. B.B. has not disclosed to CCBE the documents or evidence it now seeks to add to the record.[1] In addition, B.B.'s Motion fails to provide sufficient information to allow the District Court to analyze whether

---

[1] CCBE requested a copy of the proposed exhibits by email on January 29, 2025 but did not receive a response.

1

it may or should supplement the record. For the reasons set forth herein, B.B.'s Motion should be denied.

## I. Background

This case arises under the Individuals with Disabilities Education Act (IDEA). 20 U.S.C. § 1400 *et seq.* On February 19, 2024, B.B. filed a Complaint in this case, alleging that CCBE violated his right to a free appropriate public education, as required by IDEA. (Doc. 1, Complaint, at 2.) According to B.B., the circumstances giving rise to his claims occurred during the 2018-19, 2019-20, and 2020-21 academic years. (*Id.*) In approximately December 2021, B.B.'s mother lodged a request for a due process hearing with the Kentucky Department of Education. (*Id.* at 3.)

B.B.'s due process hearing was held on June 13-17, 2022. (*Id.* at 4.) On June 5, 2023, the Hearing Officer issued his decision. (*Id.*) In the decision, the Hearing Officer made findings with respect to thirteen separate issues. (Doc. 1-5, Findings of Fact, Conclusions of Law, and Final Order, at 2–6.) With respect to B.B.'s allegations of verbal and physical abuse, the Hearing Officer found:

> Whether Respondent verbally and physically abused Petitioner, and refused to allow to eat lunch brought from home. Respondent objected to raising these issues at trial on the grounds that Petitioner did not allege them in the Request for a Due Process Hearing. The undersigned allowed Petitioner to testify about these issues so there would be a complete record, but Respondent's objection was preserved. Respondent's objection is sustained and Petitioner is precluded from raising these issues at trial. As an alternate ruling, the undersigned finds there was no credible evidence showing Respondent ever verbally or physically abused Petitioner.

(*Id.* at 4; *see id.* at 48–49.) B.B. separately alleged that CCBE denied him a FAPE by locking him in the bathroom and restraining him. With respect to this claim, the Hearing

2

Officer found CCBE "never at any time inappropriately restrained Petitioner. The record does not contain any credible evidence Respondent did so." (*Id.* at 51.)

B.B.'s mother appealed the Hearing Officer's decision to the Exceptional Children Appeals Board (ECAB). (Doc. 1, Complaint, at 4.) On January 19, 2024, ECAB affirmed the decision of the Hearing Officer. (Doc. 1-6, ECAB Findings of Fact, Conclusions of Law, and Final Decision and Order, at 1–49.) In ECAB's Order, it noted that B.B.'s mother had requested to supplement the record with two additional exhibits during B.B.'s appeal. (*Id.* at 3.) In denying her request, ECAB cited to the significant leniency of the Hearing Officer in granting B.B.'s requests during the hearing:

> The parent was given great leeway at the hearing and repeatedly permitted to introduce records after the deadline. The subject of additional records was explicitly addressed on the first day of the hearing:
>
>> HEARING OFFICER: I'll go ahead and admit all of [the parent's] records…. Now, [parent] you're not planning to send any additional records; is that right? We've got all of your records? There's not going to be any more records; is that right?
>>
>> [PARENT}: No, I submitted all of the files.
>>
>> HEARING OFFICER: Okay. Because, you know, the school is entitled to, you know, get the records on time so that they can prepare their response to the records.
>
> TE 21, emphasis added. The subject of admitting additional records came up again on the third day of the hearing, after the hearing officer admitted records the parent had emailed the night before:
>
>> HEARING OFFICER: I am going to go ahead and admit the records that [parent] emailed today. Just by rationale, obviously, they're late, some of them; but my rationale is, I don't know how this case will come out. I do not want to get a remand because records weren't admitted or because questions go beyond the scope of direct examination, those types of things. But having said that, [parent], you know, we have these deadlines for a reason. The school, you know, they

3

> worked hard to get everything in on time, and they're allowed to rely on the deadlines I set so they'll be fully prepared. So, again, I don't know how the case will come out, but it does open up the grounds for appeal for the school, you know, if I allow you advantages that they don't get. So just -- I take it there are not going to be any additional exhibits added to the file; is that right?
>
> [PARENT}: No. I answered that question before. I said no before and I'm saying no now. I did not add anything that was not already submitted.
>
> MR. PICKETT: Well, I'm saying you're not going to add anything tomorrow, next week?
>
> [PARENT]: I'm not adding anything, Your Honor. I did not add -- the last thing I had submitted was, again -- what was that again?
>
> MR. PICKETT: Okay. You answered my question.
>
> TE 408-409, emphasis added.

(*Id.* at 4.) With respect to B.B.'s allegations of abuse, ECAB found:

> Petitioner did not prove that school personnel "retaliated" against, abused, or improperly restrained the student.
>
> Part of the "retaliation" evidently consisted of the school reporting to the parent that the student was behaving badly. " Schools purposely refused to provide [the student] free and appropriate public education. They retaliated against [student] and accused [student] of horrible things." TE 45. The parent further testified:
>
>> The teachers, the aides in the classroom, and other staff members began retaliating against [the student]. [the student] not only began coming home very sad and not wanting to go back to school the next day, but [the student] also was coming home with bruises and scratches on [student's] body.
>
> TE 38. The parent did not witness any of the alleged abuse, but offered the alleged hearsay statement of her student as evidence:
>
>> [the student] was waking up throughout the night crying saying "No school, Mommy, no school. No more restraining [the student]. No more locking [the student] in the bathroom.

4

> No more taking [the student]'s food away. No more hitting [the student]. No more school."

TE 41.

The parent testified "when I questioned them about all the bruises and scratches [the student] was getting at school, they either denied it or said they didn't know how it happened." TE 40. The parent had the opportunity to cross-examine the student's teacher who was with the student all the time in the self-contained classroom;

> Q. Have you denied [the student] access to the food I packed for [the student] for lunch?
> A. No, ma'am, never.
> Q. Never. Okay. Have you told [the student] that [student] will be restrained?
> A. There was a time where said after one hit, that we should make the statement, "Please do not hit me or you will be restrained."
> Q. So you did tell [student]?
> A. Yes, ma'am. There were those times, and I communicated that with you.
> Q. Was [the student] restrained?
> A. No, ma'am.
> Q. Have you ever used inappropriate tone of voice towards [the student]?
> A. No, ma'am.
> Q. Have the aides in the classroom used inappropriate tone of voice towards [the student]?
> A. No, ma'am.
> Q. Have you ever used inappropriate language towards [the student]?
> A. No, ma'am.
> Q. Have the aides in the classroom used inappropriate language towards [the student]?
> A. No, ma'am.
> Q. Were you verbally abusing [the student]?
> A. No, ma'am.
> Q. Were the aides in the classroom verbally abusing [the student]?
> A. No, ma'am.
> Q. Have you physically abused [the student]?
> A. No, ma'am.
> Q. Have the aides in the classroom physically abused [the student]?
> A. No, ma'am.

5

TE 79-80. Later, the parent questioned the witness about another alleged incident.

> Q. Was [the student] ever locked in the restroom because of [student's] behaviors?
> A. No, ma'am. I have no way of locking anybody in my bathroom. It is locked from the inside, not the outside.
> Q. Did the aides lock [the student] in the bathroom?
> A. No, ma'am.

TE 84. Uniformly, school personnel testified there was no retaliation, abuse, or improper restraint of the student. The only time student was restrained was during a fire drill when the student ran across the parking lot and they had to catch and bring the student back to school, but this did not involve use of a CPI or other restraint. TE 705. There was no evidence from medical or
other witnesses supporting Petitioner's theories of improper restraint. The parent testified:

> [t]he school staff not only restrained [the student] and failed to notify me, but they were inappropriately restraining [the student].

TE 39. However, there could be no notice to the parent of improper restraint if no such restraint occurred. The parent's evidence for the alleged improper restraint are photos of bruises and scratches. Some school personnel, accepting the parent's assumption that they were received at school, speculated about how they might have occurred, but no one at school had actual knowledge of the student being injured at school. For example, on 10/29/19, the parent contacted the student's teacher about bruises on the student. The teacher testified:

> And that day, [student] had a great day. No one had touched [student] for any reason, [student] kind of stayed to [student's self] that day, if I recall correctly. So I was unsure of why [student] would have had bruises that day. But the day before was bus evacuations, and [student] had run around the bus, and some adults had tried to grab [student] for [student's] safety, and those bruises could have been caused from that.

TE p. 102-103; (See also, TE 119 where speculates in a communication with parent that another student might have pinched her student.) The parent complains that no incident report was filed, but there was not evidence the school is aware of any incident causing injury to the student at school.

> There are a couple of instances where the school observed a scratch on the student. A scratch was noticed at the end of school one day that hadn't been observed at the beginning of school – see TE 101-112. The second instance is January 8, 2020, when, according to the parent's testimony summarizing the incident report, the assistant principal reported to the parent observing, and sent a picture of, a scratch that the student reported to school personnel was self-inflicted. TE 135-136.
>
> The school investigated internally parent's claim that student was restrained and reported to the student's parent:
>
>> I spoke to [student's] teacher and the instructional assistant, as well as the ISS monitor this morning in regards to your question on whether [the student] was restrained yesterday or not. The teacher and the instructional assistant stated that [student] was not restrained. The ISS monitor stated [student] was not restrained either. However, [the student] did keep getting up and hitting other students in ISS and did have to be redirected to [student's] seat.
>
> TE. 684.
>
> The parent filed a complaint with Child Protective Services, who investigated, interviewed the parent and the child, and found the complaints of abuse unsubstantiated. TE 201-209.
>
> Nonetheless, the parent contends school personnel have conspired against her student.

(Doc. 1-6, ECAB Findings of Fact, Conclusions of Law, and Final Decision and Order, at 16–19.)

B.B. now moves this Court to supplement the record with additional evidence, including: (1) B.B.'s current Individualized Education Program (IEP); (2) 2022-2023 Annual Goals and Objectives Progress Report; (3) 2023-2024 Data Progress Tracking; (4) 2024 Psycho-Education Report; and (5) testimony and exhibits supporting the allegations of verbal and physical abuse, including restraint and seclusion. B.B.'s Motion fails to identify the source or nature of the proposed "testimony and exhibits supporting the allegations of verbal and physical abuse." (Doc. 27., at 1.)

B.B. has not disclosed to CCBE the documents or evidence it now seeks to add to the record. In addition, B.B.'s Motion fails to identify the source or nature of the proposed "testimony and exhibits supporting the allegations of verbal and physical abuse."

## II. Analysis

District Courts reviewing IDEA claims are typically confined to the record of administrative proceedings. 20 U.S.C. §1415(i)(2)(C)(i). The statutory framework provides an exception to this limitation of the record, instructing:

> In any action brought under this paragraph, the court—
>
> (i) shall receive the records of the administrative proceedings;
>
> (ii) shall hear additional evidence at the request of a party; and
>
> (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C § 1415(i)(2)(C).

In interpreting 20 U.S.C § 1415(i)(2)(C)(ii), the majority of federal circuits have held that the term "additional evidence" in 20 U.S.C. § 1415(i)(2)(C) means "supplemental evidence." In *Town of Burlington v. Dept. of Educ. for the Commonwealth of Mass.*, 736 F.2d 773 (1st Cir. 1984), the First Circuit interpreted "additional" to mean "supplemental," so that witnesses could not "repeat or embellish their prior administrative hearing testimony." *Id.* at 790. *Burlington* explained that, when ruling on a motion to supplement the record, a court should weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, the reason the witness did not testify at the administrative hearing, and the conservation of judicial resources." *Id.* at 791. Several Circuits have since adopted the *Burlington* standard or cited it with approval. *See E.M.*

8

*ex rel. E.M. v. Pajaro Valley Unified Sch. Dist. Office of Admin. Hearings*, 652 F.3d 999, 1004-1005 (9th Cir. 2011) (recognizing that the Ninth Circuit has adopted the *Burlington* standard); *Sch. Bd. of Collier Cnty., Fla. v. K.C.*, 285 F.3d 977, 981 n.4 (11th Cir. 2002) (recognizing that the Eleventh Circuit has endorsed the *Burlington* standard); *Springer v. Fairfax Cnty. Sch. Bd.*, 134 F.3d 659, 666-67 (4th Cir. 1998) (adopting the *Burlington* standard); *Monticello Sch. Dist. No. 25 v. George L. on Behalf of Brock L.*, 102 F.3d 895, 901 (7th Cir. 1996) (citing *Burlington* with approval); *see also Indep. Sch. Dist. No. 283 v. S.D. ex rel. J.D.*, 88 F.3d 556, 561 (8th Cir.1996) (indicating that rendering a decision on the record compiled before the administrative agency is the norm) (citing to *Burlington*).

The Sixth Circuit has elected not to adopt "the narrowness of the *Burlington* analysis." *Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840, 851 (6th Cir. 2004). The Sixth Circuit instead defines "additional" evidence by its ordinary usage: "something that is added, or something that exists by way of addition. To 'add' means to join or unite; the limitation on what can be joined inherent to the term 'supplement' is not present in the term 'add.'" *Metro. Gov't of Nashville v. Cook*, 915 F.2d 232, 234 (6th Cir. 1990) (rejecting the holding of *Burlington*, 736 F.2d at 790-91).

The Sixth Circuit's interpretation of 20 U.S.C § 1415(i)(2)(C)(ii) is not without limits. When a District Court allows evidence beyond the administrative record, its decision is reviewed for abuse of discretion. *Somberg v. Utica Cmty. Schs.*, 908 F.3d 162, 174 (6th Cir. 2018). District Courts can be found to abuse that discretion if the court allows additional evidence "to change the character [of] the hearing from one of review to a trial de novo." *Deal*, 392 F.3d at 851 n.8 (citing *Cook*, 915 F.2d 232 at 234-35). The Sixth Circuit has further cautioned District Courts to take care to limit additional evidence to rule

9

upon issues beyond those before the ALJ. *Deal*, 392 F.3d at 850 (citing *Metro. Bd. of Pub. Educ. v. Guest*, 193 F.3d 457, 463 (6th Cir. 1999)). Finally, District Courts should "weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, the reason [the evidence was not presented] at the administrative hearing, and the conservation of judicial resources." *Metro. Gov't of Nashville v. Cook*, 915 F.2d 232, 235 (6th Cir. 1990); *see K.B. v. Memphis-Shelby Cnty.. Sch. Dist.*, 2023 U.S. Dist. LEXIS 182306, *6 (W.D. Tenn. Oct. 11, 2023) (quoting *Cook* for the same proposition); *Ruhl v. State of Ohio Dep't of Health*, No. 16-CV-773, 2016 U.S. Dist. LEXIS 140044, 2016 WL 5869828, at *5 (N.D. Ohio Oct. 7, 2016) (quoting *Cook* for the same proposition).

When a party seeks to supplement the administrative record, it carries the burden of supplying sufficient specificity to allow the District Court to: (1) measure the risk of embarking on a prohibited trial *de novo*, (2) determine whether the party has saved his best evidence for review, and (3) determine whether the proposed supplemental evidence would be within the scope of review of issues before the ALJ. *K.B. v. Memphis-Shelby Cnty. Sch. Dist.*, 2023 U.S. Dist. LEXIS 182306, *9 (W.D. Tenn. Oct. 11, 2023).

Here, in support of his request to supplement the record, B.B. offers:

> The additional evidence sought to be introduced is crucial for the Court's comprehensive understanding of the student's educational needs and the appropriateness of the education program provided. The testimony and exhibits supporting allegations of verbal and physical abuse, including restraint and seclusion, are essential for the Court to address the allegations contained in Plaintiff's request for a Due Process Hearing. Given the evolving nature of the student's educational needs and the serious nature of the allegations, this additional evidence provides relevant information, which is essential for the Court to make an informed decision based on the preponderance of the evidence.

(Doc. 27, at 2.)

B.B.'s general assertions regarding the purported relevance of the proposed evidence falls far short of providing sufficient specificity to allow the District Court to analyze whether it may or should supplement the record. Of the five categories of evidence sought to be added to the record, B.B.'s request to supplement the record lacks sufficient specificity as follows:

### (1) B.B.'s current Individualized Education Program (IEP)

- B.B. does not explain how a current IEP, presumably developed in a California school district, four academic years after the circumstances giving rise to his claims[2] is within the scope of the review issues before the ALJ, especially when B.B. has not sought to admit all the IEP's from the intervening years.

- B.B. does not identify with specificity what information contained in the current IEP is relevant to the issues before the ALJ.

- B.B. does not explain how introduction of his current IEP does not create a risk of a trial *de novo*.

- B.B. has not disclosed his current IEP to opposing counsel, so CCBE is unable to address B.B.'s deficiencies with specificity.

### (2) 2022-23 Annual Goals and Objectives Progress Report

- B.B. does not explain how a 2022-23 Annual Goals and Objectives Progress Report, presumably prepared in a California School District, two academic years after the circumstances giving rise to his claims is within the scope of the review issues before the

---

[2] The circumstances giving rise to his claims occurred during the 2018-19, 2019-20, and 2020-21 academic years. (Doc. 1, Complaint, at 2.)

ALJ, especially when B.B. has arbitrarily selected (or cherry-picked) only one such Report from the intervening years.

- B.B. does not identify with specificity what information contained in the 2022-23 Annual Goals and Objectives Progress Report is relevant to the issues before the ALJ.

- B.B. does not explain how introduction of the 2022-23 Report does not create a risk of a trial *de novo*.

- B.B. has not disclosed the 2022-23 Annual Goals and Objectives Progress Report to opposing counsel, so CCBE is unable to address B.B.'s deficiencies with specificity.

### (3) 2023-24 Data Progress Tracking Report

- B.B. does not explain how a 2023-24 Data Progress Tracking Report, presumably prepared in a California School District, three academic years after the circumstances giving rise to his claims is within the scope of the review issues before the ALJ, especially when B.B. has arbitrarily selected (or cherry-picked) only one such Report from the intervening years.

- B.B. does not identify with specificity what information contained in the 2023-24 Data Progress Tracking Report is relevant to the issues before the ALJ.

- B.B. does not explain how introduction of the 2023-24 Data Progress Tracking Report does not create a risk of a trial *de novo*.

- B.B. has not disclosed the 2023-24 Data Progress Tracking Report to opposing counsel, so CCBE is unable to address B.B.'s deficiencies with specificity.

### (4) 2024 Psycho-Education Report

- B.B. does not explain how a 2024 Psycho-Education Report, prepared by an unknown source, three academic years after the circumstances giving rise to his claims,

is within the scope of the review issues before the ALJ, especially when B.B. has arbitrarily selected (or cherry-picked) only one such Report from the intervening years.

- B.B. does not identify with specificity what information contained in the 2024 Psycho-Education Report is relevant to the issues before the ALJ.

- B.B. does not explain how introduction of the 2024 Psycho-Education Report does not create a risk of a trial *de novo*.

- B.B. has not disclosed the 2024 Psycho-Education Report to opposing counsel, so CCBE is unable to address B.B.'s deficiencies with specificity.

**(5) Testimony and Exhibits Supporting Allegations of Verbal and Physical Abuse, Including Restraint and Seclusion.**

- B.B. does not explain how new, undisclosed testimony and exhibits supporting allegations of verbal and physical abuse is within the scope of the review issues before the ALJ. Notably, the ALJ found B.B. had not preserved his claim of verbal and physical abuse as he did not allege these claims in his Request for a Due Process Hearing.

- B.B. does not identify with any specificity the nature of the proposed testimony and exhibits and therefore does not identify how the proposed evidence is relevant to the issues before the ALJ.

- B.B. does not explain how introduction of the new, undisclosed testimony and evidence does not create a risk of a trial *de novo*.

- B.B. does not explain why this evidence was not previously admitted before the ALJ, thereby allowing this Court to determine whether determine B.B. has saved his best evidence for review.

- B.B. has not disclosed the proposed testimony and exhibits to opposing counsel, so CCBE is unable to address B.B.'s deficiencies with specificity.

### III. Conclusion

Because B.B. has not provided sufficient information to allow the District Court to analyze whether it may or should supplement the record, B.B.'s Motion to Provide Additional Evidence Pursuant to 34 CFR 300.516 should be denied.

### CERTIFICATE OF SERVICE

The undersigned certifies that a true and accurate copy of the foregoing has been electronically filed through the CMECF and mailed to the following, Natalie Nelson, Shaw & Nelson, PLLC, 9700 Park Plaza, Louisville, KY 40041, and Todd Allen, Kentucky Department of Education, 300 Sower Boulevard, 5th Floor, Frankfort, KY 40601, this 4th day of February 2025.

/s/Jack N. Lackey Jr.
Jack N. Lackey Jr.
DEATHERAGE, MYERS & LACKEY, PLLC
701 S. Main Street
P.O. Box 1065
Hopkinsville, KY 42241-1065
Tel:   270-886-6800
Fax:   270-885-7127
Email: jlackey@dmlfirm.com
Counsel for Defendant